FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
8/8/2025
JEFFREY P. COLWELL, CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Misc. Case No.

**In re: Department of Justice Administrative Subpoena No. 25-1431-030**

---

**CHILDREN'S HOSPITAL COLORADO'S MOTION TO QUASH SUBPOENA**

---

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ........................................................................................................1

II.     FACTUAL BACKGROUND.....................................................................................3

      A.      Gender-affirming health care is critical to the transgender community. .................3

      B.      The State of Colorado has codified into law its support for the transgender community and the safe provision of gender-affirming care...................................3

      C.      Children's Hospital provides critical care, including to transgender minors...........4

      D.      The Administration has launched a campaign to deny the existence of transgender people and prohibit their access to critical care. ...................................4

      E.      The Administration continued its campaign of vilification and intimidation. .........................................................................................................6

      F.      The Subpoena consists of sweeping requests for information..............................6

      G.      The Administration boasted about coercing hospitals to cease providing care....................................................................................................................7

      H.      Children's Hospital is already experiencing the Subpoena's intended effect. ....................................................................................................................7

      I.      The parties' meet and confers did not meaningfully narrow the Subpoena. ...........8

III.    LEGAL STANDARD.................................................................................................8

IV.     ARGUMENT...............................................................................................................9

      A.      The Subpoena should be quashed because it lacks a factual basis and was not issued for a legitimate purpose. ........................................................................9

            1.      The DOJ has no suspicion or evidence of wrongdoing. .............................9

            2.      The Subpoena lacks a legitimate purpose.................................................10

            3.      At a minimum, Children's Hospital is entitled to an evidentiary hearing.......................................................................................................11

      B.      The Subpoena should be quashed because it is not lawfully authorized. ..............12

i

C.    The Subpoena should be quashed because it is overbroad and unduly burdensome. ...................................................................................................12

V.    CONCLUSION ...............................................................................................................15

3022304

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Commonwealth of Massachusetts v. Donald J. Trump*,
   No. 1:25-cv-12162 (D. Mass. Aug. 1, 2025) ........................................................................2

*FEC v. Committee to Elect Lyndon La Rouche*,
   613 F.2d 849 (D.C. Cir. 1979) .................................................................................................12

*Freese v. F.D.I.C.*,
   837 F. Supp. 22 (D.N.H. 1993) ................................................................................................9

*Herring v. Keenan*,
   218 F.3d 1171 (10th Cir. 2000) .........................................................................................13, 14

*In re Sealed Case (Admin. Subpoena)*,
   42 F.3d 1412 (D.C. Cir. 1994) .................................................................................................9

*PFLAG, Inc. v. Trump*,
   769 F. Supp. 3d 405 (D. Md. 2025) ....................................................................................5, 10

*SEC v. Dresser Indus., Inc.*,
   628 F.2d 1368 (D.C. Cir. 1980) .............................................................................................12

*SEC v. Wheeling-Pittsburgh Steel Corp.*,
   648 F.2d 118 (3d Cir. 1981).....................................................................................................12

*United States Immig. & Customs Enf't. v. Gomez*,
   445 F. Supp. 3d 1213 (D. Colo. 2020) .....................................................................................9

*United States v. Clarke*,
   573 U.S. 248 (2014).........................................................................................................11, 12

*United States v. Powell*,
   379 U.S. 48 (1964)...................................................................................................................10

*United States v. Salter*,
   432 F.2d 697 (1st Cir. 1970)....................................................................................................12

*United States v. Skrmetti*,
   145 S. Ct. 1816 (2025)..........................................................................................................1, 9

*United States v. Wilson*,
  98 F.4th 1204 (10th Cir. 2024) ........................................................................2, 8

*Washington v. Trump*,
  768 F. Supp. 3d 1239 (W.D. Wash. 2025) ............................................3, 5, 10, 15

**Federal Statutes**

18 U.S.C. § 3486 ........................................................................................................12

**State Statutes**

Colo. Rev. Stat. Ann. § 10-16-104(30) ......................................................................3

 Colo. Rev. Stat. Ann. §24-34-300.7 ..........................................................................3

Colo. Rev. Stat. Ann. §§ 25-2-113.8 ..........................................................................3

**State Regulations**

10 Code Colo. Regs. § 2505-10:8.735.5.A .................................................................3

**Federal Regulations**

45 C.F.R. § 164.512 ...................................................................................................13

**Other Authorities**

Joshua D. Safer & Vin Tangpricha, *Care of Transgender Persons*, 381 N. Eng. J.
  Med. 2451 (2019) ...................................................................................................3

*Standards of Care for the Health of Transgender and Gender Diverse People*,
  Version 8, 23 Int'l J. of Transgender Health S1 (2022) ........................................3

## I.      INTRODUCTION

The United States Department of Justice ("DOJ") has served a sprawling, fifteen-category administrative subpoena (the "Subpoena") on Children's Hospital Colorado ("Children's Hospital") seeking vast quantities of information regarding gender-affirming care. The provision of that care is lawful in Colorado and Children's Hospital provides it responsibly, pursuant to strict guidelines, in full compliance with Colorado law, and consistent with the recommendations of the American Medical Association and the American Academy of Pediatrics.  In meet and confer calls, the DOJ attorneys handling this matter acknowledged that they have no reason to suspect any form of wrongdoing by Children's Hospital, or any evidence of misconduct by Children's Hospital or anyone connected with it.  They also acknowledged that the Subpoena was served to further the objectives of two enjoined presidential Executive Orders that were found to be motivated by purposeful discrimination, and a memorandum from the Attorney General deriding gender-affirming care as "mutilation" and "abuse" and promising to use the DOJ's vast resources to eliminate it.

Against this backdrop, the Subpoena's purpose is transparent.  It is designed to intimidate and harass Children's Hospital into stopping its lawful provision of gender-affirming care to transgender youth and was issued because the Administration disagrees with Colorado's decision to support that form of healthcare.  The Subpoena is also clearly designed to strike fear in patients and providers who are receiving and administering gender-affirming care by sending them the message that "the government is watching them."  But Colorado's decision to support gender-affirming care is entitled to the same deference that the U.S. Supreme Court has decreed that courts must give to states that preclude gender-affirming care.  *See United States v. Skrmetti*,

145 S. Ct. 1816, 1836–37 (2025).  And there is no federal law that prohibits or criminalizes the receipt or provision of gender-affirming care.  Children's Hospital cannot properly be subject to a burdensome and harassing subpoena for providing care that is safe, effective, and allowed under Colorado law.

Mindful of these facts, fifteen states and the District of Columbia recently sued to invalidate the memoranda underlying the Subpoena because the "DOJ's actions [] reflect an unconstitutional attempt to infringe on the States' power to regulate medicine" and the "DOJ's intent in issuing the subpoenas is not enforcement of the specific prohibitions of [any federal] laws but the chilling of medical care with which the administration disagrees ideologically." ECF No. 1, *Commonwealth of Mass. et al. v. Donald J. Trump et al.*, No. 1:25-cv-12162 (D. Mass. Aug. 1, 2025) ¶¶ 132, 190.  The instant Subpoena is an object of that lawsuit.

Separate and apart from the Subpoena's improper purpose, it was not properly authorized and its sweeping requests for production—seeking the identity and records of every patient that received puberty blockers or hormone treatments since 2020, the complete personnel files of hundreds of employees, and virtually every internal and external communication relating to gender-affirming treatment, to name a few—confirm that the Subpoena is a form of harassment and provide independent bases to quash it.  The Subpoena is not "within the [] authority of the agency" nor "sufficiently limited in scope, relevant in purpose, and specific in directive" to require compliance.  *United States v. Wilson*, 98 F.4th 1204, 1221 (10th Cir. 2024).

In sum, the Subpoena should be quashed in its entirety because it lacks a proper purpose, was not properly authorized, and is overbroad and unduly burdensome.

## II.     FACTUAL BACKGROUND

### A.     Gender-affirming health care is critical to the transgender community.

The term "gender identity" is used "to describe a person's sense of being male, female, neither, or some combination of both."  Joshua D. Safer & Vin Tangpricha, *Care of Transgender Persons*, 381 N. Eng. J. Med. 2451, 2451 (2019) (cleaned up).  "A 'transgender' individual's gender identity does not correspond to their sex assigned at birth[.]"  *Id.*  Gender-affirming care is care designed to support and affirm an individual's gender identity.  *See Standards of Care for the Health of Transgender and Gender Diverse People*, Version 8, 23 Int'l J. of Transgender Health S1, S13 (2022).  As relevant here, puberty blockers are a medical intervention that can postpone puberty changes that do not align with one's gender identity.  *Id.* at S64.  Hormone therapy allows transgender and gender-diverse patients to undergo the physical puberty changes that align with their gender identity.  *Id.* at S110.  Gender-related care is safe and effective.  *See Washington v. Trump*, 768 F. Supp. 3d 1239, 1273 (W.D. Wash. 2025).

### B.     The State of Colorado has codified into law its support for the transgender community and the safe provision of gender-affirming care.

The State of Colorado codified into law support for its transgender community.  *See* Colo. Rev. Stat. Ann. §§ 25-2-113.8 (simplifying the process for transgender individuals to change the gender marker on their birth certificates); 24-34-300.7 (bolstering protections for parents who help their children access gender-affirming care).  The "Protect Access to Gender-Affirming Health Care Act," for example, prohibits health insurance plans from denying or limiting coverage for medically necessary gender-affirming health care as determined by a qualified provider.  *See id.* § 10-16-104(30); *see also* 10 Code Colo. Regs. § 2505-10:8.735.5.A (including transgender care as covered services for Medicaid).

C.      **Children's Hospital provides critical care, including to transgender minors.**

Children's Hospital is one of the preeminent healthcare institutions in Colorado.  The

Children's Hospital healthcare system consists of four hospitals and thirteen additional sites

within Colorado.  Declaration of David Brumbaugh, M.D. ("Brumbaugh Decl.") ¶ 5.  More than

9,500 people work at Children's Hospital and more than 3,000 additional people volunteer.  *Id.* ¶

7.  Children's Hospital's medical staff comprises more than 2,900 people, and there are also

more than 300 additional residents and fellows who are training in pediatric medical fields.  *Id.*

Children's Hospital's revenue cycle staff consists of more than 600 people, including more than

40 coders.  *Id.* ¶ 8.  Children's Hospital's managers number into the thousands and run the gamut

from the Director of Food Personnel to the Chief Executive Officer.  *Id.* ¶ 9.  Everyone at

Children's Hospital communicates using company-assigned email, among other things.  *Id.* ¶ 37.

In 2024, Children's Hospital hosted 196,987 emergency and urgent care visits; 697,194

outpatient visits; and 19,448 inpatient admissions.  *Id.* ¶ 11.  The vast majority (more than 95%)

of Children's Hospital's patients are minors under the age of 18, and almost half of the patient

population are Medicaid beneficiaries.  *Id.* ¶ 12.  Children's Hospital often provides care to

gender-diverse children, adolescents, and their families through its TRUE Center for Gender

Diversity, which has hosted over 3,000 patients since 2020.  *Id.* ¶ 16.  In addition to behavioral

health services and counseling, the TRUE Center's services include puberty-delaying treatments

and hormone therapy in appropriate circumstances.  *Id.* ¶¶ 15-24.

D.      **The Administration has launched a campaign to deny the existence of**
        **transgender people and prohibit their access to critical care.**

On January 20, 2025, the President issued Executive Order 14,168 (the "Gender Ideology

EO"), announcing that "[i]t is the policy of the United States to recognize two sexes, male and

female[,]" Declaration of Cody Gray ("Gray Decl."), Ex. 6 at 1-2, even though no United States

law affords the President the authority to designate the gender of anyone located in the United

States, much less all persons seeking medical care in Colorado.  The Gender Ideology EO

declares the lived experience of transgender individuals to be a "false claim" under the moniker

of "gender ideology" and purports to deny the reality that transgender people exist.  *Id.*

On January 28, 2025, the President issued Executive Order 14,187 (the "Medical

Services EO"), announcing that "it is the policy of the United States that it will not fund,

sponsor, promote, assist, or support the so-called 'transition' of a child from one sex to another,

and it will rigorously enforce all laws that prohibit or limit these destructive and life-altering

procedures."  *Id.* Ex. 7 at 1.  This EO uses the medically inaccurate and debasing term "chemical

and surgical mutilation" to reference the use of puberty blockers and sex hormones.  *Id.*

Shortly after these executive orders were issued, several parties, including the State of

Colorado, challenged the constitutionality of the orders and two federal courts preliminarily

enjoined implementation of them on the basis that the orders unlawfully discriminate on the basis

of sex and transgender status and violate the Separation of Powers.  *See Washington*, 768 F.

Supp. 3d at 1252; *PFLAG, Inc. v. Trump*, 769 F. Supp. 3d 405, 418 (D. Md. 2025).

The *Washington* court explained that the Gender Ideology EO "reflects a bare desire to

harm a politically unpopular group[.]"  768 F. Supp. 3d at 1277.  And the decisions rejected the

Administration's justification for the Medical Services EO, finding that it "simply dismisses the

Standards of Care as 'junk science' and conclusorily pronounces that they 'lack[ ] scientific

integrity[,]'" even though "almost every court and medical organization to address the issue has

disagreed with that view."  *Id.* at 1273.

5

**E.    The Administration continued its campaign of vilification and intimidation.**

Undeterred by court-ordered prohibitions on enforcement of the Gender Ideology EO and Medical Services EO, Attorney General Pam Bondi issued a memorandum in April 2025 expressly instructing DOJ employees to enforce the terms of the Medical Services EO.  *See* Gray Decl., Ex. 8 ("Bondi Memo") at 3.  The Bondi Memo directs DOJ employees to pursue investigations of medical service providers who provide gender-related treatment to minors and repeats the same language disparaging transgender people that courts found to evince purposeful discrimination.  *See, e.g.*, *id.* at 4.  In June 2025, Assistant Attorney General Brett A. Shumate issued a memorandum declaring that the DOJ Civil Division "will use all available resources to prioritize the investigations of doctors, hospitals, [and] pharmaceutical companies" to enforce the enjoined Gender Ideology and Medical Services EOs and the Bondi Memo.  *See* Gray Decl., Ex. 9 ("Shumate Memo") at 2.  The memorandum states that the Civil Division will follow through on the Bondi Memo's directives to pursue investigations for violations of the Food, Drug and Cosmetic Act ("FDCA") and the False Claims Act ("FCA").  *Id.* at 2-3.

Shortly after these Memos were disseminated, the DOJ issued a press release announcing that "it has sent more than 20 subpoenas to doctors and clinics involved in performing transgender medical procedures on children."  Gray Decl., Ex. 10.  On July 14, 2025, Children's Hospital was served with the instant Subpoena.  *Id.* ¶ 3.

**F.    The Subpoena consists of sweeping requests for information.**

The Subpoena seeks the identity and medical records of every patient that received puberty blockers or hormone treatments since 2020, the billing and insurance records for thousands of minor patients, the complete personnel files of scores of Children's Hospital

employees, and virtually every internal and external communication Children's Hospital has had

relating to gender-affirming care.  *See* Gray Decl., Ex. 1 ("Subpoena").

**G.      The Administration boasted about coercing hospitals to cease providing care.**

Just over two weeks after the DOJ publicly announced its campaign to subpoena dozens

of hospitals serving transgender youth and mere days after the DOJ served the Subpoena at issue

here, the White House issued a Press Release entitled, "President Trump Promised to End Child

Sexual Mutilation – and He Delivered."  Gray Decl., Ex. 11.  The release crows about the

"growing list of health systems across the country" that limited or ended gender-affirming care to

youth "following President Trump's [Medical Services] executive action."  *Id.*

**H.      Children's Hospital is already experiencing the Subpoena's intended effect.**

After Children's Hospital was served, word of the Subpoena spread rapidly within the

organization, in part because Children's Hospital was forced by the Subpoena's scope to

implement a broad legal hold.  Brumbaugh Decl. ¶ 27.  To quell growing fears within the

community, Children's Hospital acknowledged receipt of the Subpoena but assured patients and

providers that it was evaluating the Subpoena and was not making changes to its care model at

the present time.  *Id.*  Children's Hospital set up a call center to be able to receive comments

from the TRUE Center's patients and their families.  *Id.* ¶ 28.  Children's Hospital also received

comments from its healthcare providers.  *Id.*

Based on that feedback, the Subpoena is already having its intended effect.  A significant

number of patients contacted Children's Hospital to demand that Children's Hospital not

transmit to the Administration their confidential medical records.  *Id.* ¶¶ 29-30.  Patients have

also expressed that they are scared about losing access to critical care, about their physical

7

safety, and about being further stigmatized and targeted by those who do not support the
transgender community. *Id.* ¶ 32. Children's Hospital's providers have expressed similar fears.
Several providers have expressed anxiety and fear about the possibility of being prosecuted—
notwithstanding that the provision of gender-affirming care is lawful in Colorado. *Id.* ¶ 34. The
combined effect of the EOs and the DOJ's actions has also reduced the number of patients who
are seeking care. *Id.* ¶ 36. The TRUE Center had a six-month waitlist for an appointment in
January; now, there is no waitlist. *Id.*

**I.      The parties' meet and confers did not meaningfully narrow the Subpoena.**

On July 29, 2025, Children's Hospital's counsel met and conferred via Zoom with DOJ
attorneys about the Subpoena. Gray Decl. ¶ 5. The DOJ confirmed that it does not have any
individualized suspicion of wrongdoing by anyone at Children's Hospital and is not aware of any
facts or allegations suggesting any form of wrongdoing at Children's Hospital. *Id.* ¶ 6. The DOJ
also confirmed that the Subpoena was a product of the directives set forth in the Bondi and
Shumate Memos. *Id.* ¶ 7. The DOJ further explained that the Subpoena was issued as part of a
broader strategy to investigate hospitals that provide gender-related care to minors. *Id.* The
DOJ said Children's Hospital received the Subpoena because it provides such care. *Id.* The DOJ
limited certain document requests, but not others. *See id.* ¶ 8; *id.*, Ex. 2. After DOJ extended the
response deadline, the parties met and conferred again on August 7, 2025. Gray Decl. ¶¶ 13-15.

**III.    LEGAL STANDARD**

An administrative subpoena is valid only if "the inquiry is within the [] authority of the
agency," and the subpoena is "sufficiently limited in scope, relevant in purpose, and specific in
directive so that compliance will not be unreasonably burdensome." *Wilson*, 98 F.4th at 1221. A

subpoena is invalid if it is issued for an "illegitimate purpose[.]" *U.S. Imm. & Cus. En. v. Gomez*, 445 F. Supp. 3d 1213, 1215 (D. Colo. 2020); *United States v. Powell*, 379 U.S. 48, 58 (1964).

## IV.    ARGUMENT

### A.    The Subpoena should be quashed because it lacks a factual basis and was not issued for a legitimate purpose.

#### 1.    *The DOJ has no suspicion or evidence of wrongdoing.*

An agency "may seek information" through an administrative subpoena when "it has an articulable suspicion of wrongdoing." *In re Sealed Case (Admin. Subpoena)*, 42 F.3d 1412, 1420 (D.C. Cir. 1994). "[An agency] is without statutory authority to subpoena information for the general purpose of uncovering 'other wrongdoing, as yet unknown.'" *Id.* (citation omitted).

Here, the Subpoena should be quashed because the DOJ confirmed it does not have any individualized suspicion of wrongdoing by anyone at Children's Hospital and is not aware of any facts or allegations suggesting any form of wrongdoing at Children's Hospital. Gray Decl. ¶¶ 5, 7. To the contrary, the DOJ confirmed that its investigation relates solely to a category of medical care (gender-affirming care for minors) that is expressly protected by statute in Colorado. *Id.*, Ex. 2. Colorado's decision to support gender-affirming care is not a valid basis for a subpoena. *See Skrmetti*, 145 S. Ct. at 1836–37 (states are entitled to "wide discretion" to regulate the provision of gender-affirming medical care to minors). As such, this is precisely the type of "general purpose" investigation that is impermissible. *In re Sealed Case*, 42 F.3d at 1420; *Freese v. F.D.I.C.*, 837 F. Supp. 22, 25 (D.N.H. 1993) *vacated on appeal as moot*, 70 F.3d 1252 (1st Cir. 1994) ("allow[ing] the FDIC to conduct a fishing expedition through the plaintiff's private papers in the hope that some evidence of wrongdoing will surface flies in the face of the spirit, if not the letter, of the Fourth Amendment.").

2.      *The Subpoena lacks a legitimate purpose.*

An administrative investigation must "be conducted pursuant to a legitimate purpose"
and any attempt to enforce a subpoena for an "improper purpose," such as to "harass" a recipient,
"pressure" a recipient, or to pursue any other motive lacking "good faith[,]" constitutes an
"abuse" of the "court's process[.]"  *See Powell*, 379 U.S. at 57–58.

Here, the Subpoena lacks a legitimate purpose.  DOJ confirmed it does not have any
individualized suspicion of wrongdoing and is not aware of any facts or allegations suggesting
any form of misconduct at Children's Hospital.  Gray Decl. ¶¶ 4, 6.  And it is clear from the
Administration's public statements that the Subpoena is part of an improper effort to intimidate
medical providers to forego providing gender-affirming care.

The DOJ has admitted that the Subpoena was issued to effectuate directives set forth in
the Bondi and Shumate Memos.  *Id.* ¶ 7.  Those Memos parrot the language of the EOs
disparaging transgender people and baselessly characterizing gender-affirming care for minors as
"abuse" and "mutilation."  *See supra* §§ II.D, E.  Those Memos were also issued after two
federal district courts enjoined implementation of the EOs for evincing purposeful
discrimination.  *See Washington*, 768 F. Supp. 3d at 1252; *PFLAG, Inc.*, 769 F. Supp. 3d at 418.
As *Washington* explained, the EOs reflect "a bare desire to harm a politically unpopular group"
and "caus[e] the discontinuation of [gender-affirming] care at medical institutions around the
country[.]"  768 F. Supp. 3d at 1277, 1279.

So too with the instant Subpoena.  In seeking to enforce the enjoined executive orders
without any individualized suspicion—and notwithstanding that gender-affirming care is entirely
lawful in Colorado—the DOJ is plainly seeking to intimidate and harass Children's Hospital into

10

suspending or limiting its provision of critical gender-affirming care to a politically unpopular group that the Administration apparently disfavors.  The Subpoena also appears designed to strike fear in patients and providers who are lawfully seeking and administering gender-affirming care:  the DOJ disclosed the existence and substance of its investigation—in contravention of DOJ policy, Justice Manual 1-7.400(B)—so that patients and providers know that the DOJ is "watching them."  On July 25th, the Administration publicly boasted about its success in coercing hospitals across the country to suspend their provision of gender-affirming care to minors.  Gray Decl., Ex. 11.  These actions confirm that the investigation is designed to cause providers to forego providing gender-affirming care—or else face a prolonged and burdensome fight with the DOJ over a facially overbroad and unreasonable administrative subpoena.

The fact that gender-affirming medical care for minors is lawful in Colorado and covered by Medicaid also undermines any argument the DOJ may assert that its pursuit of priorities set forth in the Shumate Memo demonstrates a legitimate purpose.  *See* Shumate Memo at 3 (discussing possible false claims scenario).  Providers in Colorado would have no reason to code or bill for gender-affirming care in any surreptitious manner because the care is legal.  The public statements and actions by the Administration and the DOJ's admission that the Subpoena lacks a factual basis demonstrate the Subpoena's improper purpose.  It should be quashed in full.

3.     *At a minimum, Children's Hospital is entitled to an evidentiary hearing.*

Recipients of administrative subpoenas are entitled to request an evidentiary hearing to substantiate a claim that a subpoena has been issued for an improper purpose when they can point to "specific facts or circumstances plausibly raising an inference of bad faith."  *See United States v. Clarke*, 573 U.S. 248, 254 (2014).  Here, the "specific facts [and] circumstances" raise a

11

"plausible inference" of bad faith, *id.*, or "doubts about the [DOJ's] good faith[.]"  *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1388 (D.C. Cir. 1980).  The DOJ's behavior and statements prior to and during the investigation, coupled with its admission that it has no suspicion or evidence of wrongdoing by Children's Hospital, is, at the very least, circumstantial evidence of an improper purpose warranting an evidentiary hearing.  *See, e.g.*, *FEC v. Committee to Elect Lyndon La Rouche*, 613 F.2d 849, 863 (D.C. Cir. 1979); *U.S. v. Salter*, 432 F.2d 697, 700 (1st Cir. 1970); *SEC v. Wheeling-Pittsburgh Steel Corp.*, 648 F.2d 118, 128 (3d Cir. 1981).

**B.     The Subpoena should be quashed because it is not lawfully authorized.**

As an independent ground for relief, the Subpoena should be quashed because it was not lawfully authorized.  Under 18 U.S.C. § 3486, the Attorney General or her designee may issue subpoenas for legitimate investigations of "a [f]ederal health care offense," 18 U.S.C. § 3486(a)(1)(A)(i)(I), and that authority has been delegated to "[e]ach United States Attorney" and "[th]e Assistant Attorney General for the Criminal Division."  DOJ Justice Manual § 9-44.201.  The Subpoena at issue here, however, was issued by the Assistant Attorney General for the *Civil* Division.  *See* Subpoena at 1.  It is therefore unauthorized.  Further, the Subpoena was issued pursuant to the Bondi Memo, including its directive to pursue investigations under the False Claims Act.  But Section 3486 permits investigation into a specific set of defined offenses, and that set does not include the False Claims Act.  *See* 18 U.S.C. § 3486(a)(1)(A)(i)(I); *id.* § 24(a).

**C.     The Subpoena should be quashed because it is overbroad and unduly burdensome.**

Finally, the Subpoena should be quashed in its entirety because it requests irrelevant information and is overbroad and unduly burdensome.  Compliance would also hinder Children's Hospital's operations and improperly invade the privacy interest of patients.

**RFPs 11, 12, 13, 15: Patient medical files for anyone who was prescribed puberty blockers or hormone therapy, consent documents, and documents regarding any adverse events**.  These requests seek extremely sensitive patient health and identifying information without justification or particularized suspicion and should be quashed as improper.  Under HIPAA, disclosure of protected medical information to law enforcement is permitted only if, "(1) The information sought is relevant and material to a legitimate law enforcement inquiry; (2) The request is specific and limited in scope to the extent reasonably practicable in light of the purpose for which the information is sought; and (3) De-identified information could not reasonably be used."  45 C.F.R. § 164.512(f)(1)(ii)(C).

Here, the DOJ has no legitimate basis for its investigation and has failed to demonstrate how its sweeping requests for thousands of patient medical files is in any way relevant, specific, or limited.  Moreover, these burdensome requests also seek medical information that intrudes on each patient's constitutional right to privacy in their medical information.  *See Herring v. Keenan*, 218 F.3d 1171, 1173 (10th Cir. 2000); Brumbaugh Decl. ¶¶ 30-35 (explaining unique harms of disclosing highly sensitive information contained in records of gender-diverse patients).  The DOJ has come nowhere close to justifying its demand for such sensitive patient information.

**RFP 1: Children's Hospital personnel files.**  After initially seeking thousands of personnel files, the DOJ recently narrowed this request to "each person connected to [the] Children's Colorado Gender Clinic" and anyone "with decision-making authority governing the Gender Clinic."  Gray Decl., Ex. 2.  Even so, the request is improper.  The DOJ has never reasonably explained how personnel files are plausibly related to any legitimate investigation, particularly given that gender-affirming care is legal in Colorado and can't serve as a basis for

13

any kind of discipline.   Moreover, the request continues to seek hundreds of files, which is

unduly burdensome.  *See* Brumbaugh Decl. ¶¶ 38–39.

      **RFPs 2 and 3**: **All documents relating to the use of diagnosis codes to treat minors.**

RFPs 2 and 3 initially sought "all documents" related to Children's Hospital's care for every one

of its minor patients—regardless of whether they received gender-affirming care.  The DOJ now

maintains that it is seeking those records only for patients who were treated by the TRUE Center.

Gray Decl., Ex. 2.  That is no solution.  This Subpoena cannot be used to investigate potential

violations of the False Claims Act.  *See supra* § III.B.  Moreover, there is no legitimate basis to

seek "billing records, insurance claims, internal protocols, or guidance" regarding gender-related

care, given that such care is legal in Colorado.  The requests are also overbroad to the extent they

seek documents about treatments that do *not* pertain to gender-related care, as the DOJ concedes

that such treatments are not the subject of its investigation.  Gray Decl., Ex. 2.

      The requests are unduly burdensome because thousands of patients have received care

through the TRUE Center during the relevant time period and the requests unjustifiably call for

"all documents" related to those visits.  Brumbaugh Decl. ¶¶ 16, 38.  Moreover, it would be

unduly burdensome to require any form of compliance given that Colorado protects gender-

affirming care, so providers have no reason to do anything improper in billing for that care.

      Finally, by their very nature, billing records and insurance claims contain protected

patient health information.  That information is protected from disclosure under HIPAA, and

DOJ has made no attempt to justify its desire to intrude on the privacy of Children's Hospital's

patients.  Medical information also qualifies as information over which patients have an even

greater constitutional right to privacy.  *See, e.g.*, *Herring*, 218 F.3d at 1173.

**RFPs 4, 5 6**: **Communications about the use of ICD codes for gender-related care.**
These requests should be quashed.  The investigative theory underlying the requests is beyond
the scope of the DOJ's authority pursuant to the Subpoena and non-sensical because it is lawful
to bill and code for gender-affirming care in Colorado.  The requests are also overbroad and
unduly burdensome because they would require reviewing the communications of potentially
thousands of Children's Hospital personnel—without any legitimate law enforcement purpose or
particularized suspicion of wrongdoing to support such a costly and time-consuming intrusion.
The DOJ's narrowing of RFP 5 to communications bearing on gender-related care for "minors"
doesn't change the calculus because virtually all of Children's Hospital's patients are minors
(and there are thousands of them).  In addition, as discussed above, the requests improperly call
for the disclosure of protected patient information.

**RFPs 7, 8, 9, 10, 14**: **Communications with, and materials received from, third
parties regarding puberty blockers, hormones, and gender-related care**.  These requests
should be quashed for the reasons articulated above.  They are overbroad, unjustifiably sweep in
hundreds of potential custodians, and target communications about medication and care that is
lawfully administered in Colorado and widely recognized as safe and effective for transgender
patients.  *Washington*, 768 F. Supp. 3d at 1273.  The requests also intrude on the privacy
interests of third parties and patients without justification.

## V.    CONCLUSION

For the foregoing reasons, the Subpoena should be quashed in its entirety.  Alternatively,
the Court should hold an evidentiary hearing to assess the DOJ's purpose for the Subpoena.

Respectfully submitted,

Dated:  August 8, 2025                By:    /s/ Elliot R. Peters
_____

Elliot R. Peters
*epeters@keker.com*
Cody Gray
*cgray@keker.com*
Katherine S. Folly
*kfolly@keker.com*
Aseem Mehta
*amehta@keker.com*
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415-391-5400
Facsimile:    415-397-7188

*Attorneys for Children's Hospital Colorado*

16