IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Misc. Case No.

**In re: Department of Justice Administrative Subpoena No. 25-1431-030**

**DECLARATION OF CODY GRAY IN SUPPORT OF CHILDREN'S HOSPITAL COLORADO'S MOTION TO QUASH SUBPOENA AND MOTION TO RESTRICT**

3019909

I, Cody Gray, declare as follows:

1. I am an attorney licensed to practice law in the State of California. I am also admitted to practice before the United States District Court for the District of Colorado. I am a partner at Keker, Van Nest and Peters LLP, and I represent Children's Hospital Colorado ("Children's Hospital") in this action.

2. I submit this declaration in support of Children's Hospital's Motion to Quash Subpoena and Motion to Restrict. I have personal knowledge of the facts set forth herein, and if called to testify as a witness thereto under oath, I could competently do so.

3. Attached hereto as **Exhibit 1** is a true and correct copy of United States Department of Justice ("DOJ") Subpoena Duces Tecum No. 25-1431-030 ("the Subpoena") and Attachment A. The face of the Subpoena indicates that it was signed by Assistant Attorney General Brett A. Shumate on July 3, 2025. I understand that Children's Hospital was served with the Subpoena on July 14, 2025.

4. Shortly after Children's Hospital was served, I understand that Patrick O'Rourke, the Senior Vice President and Chief Legal Officer for Children's Hospital, participated in a telephonic conference with Scott B. Dahlquist, a DOJ attorney, regarding the Subpoena. During that call, I understand that Mr. Dahlquist stated that the Subpoena was not served in connection with any evidence of wrongdoing by Children's Hospital or anyone affiliated with Children's Hospital. I also understand that Mr. Dahlquist stated that he would consider extending the compliance date if Children's Hospital was inclined to produce documents and comply with the requests set forth in the Subpoena and Attachment A.

2

3019909

5. On July 25, 2025, my partner, Elliot Peters, and I e-mailed Mr. Dahlquist on behalf of our client, Children's Hospital, to request a meet and confer with the DOJ to discuss the Subpoena. Thereafter, on July 29, 2025, my colleagues and I conferred over video and phone with counsel for the DOJ; namely, Scott Dahlquist, David Gunn, Ross Goldstein, and Jordan Campbell, regarding the Subpoena.

6. During the meet and confer, the DOJ re-confirmed that it does not have any individualized suspicion of wrongdoing by anyone at Children's Hospital and is not aware of any facts or allegations suggesting any form of wrongdoing at Children's Hospital.

7. The DOJ also confirmed that the Subpoena was issued in response to recent memoranda that the DOJ issued, including directives the DOJ received in a memorandum from Attorney General Pam Bondi to investigate whether there may have been any violations of federal law in connection with gender-affirming care for minors. The DOJ explained that the Subpoena was issued to Children's Hospital because Children's Hospital provides such care, including care for gender dysphoria. The DOJ also stated that the Subpoena was part of a broader strategy to investigate hospitals that provide gender-related care to minors.

8. During the meet and confer, the parties discussed the document requests ("RFPs"). Mr. Peters and I explained our position that certain requests were overbroad and unduly burdensome based on what we understood about Children's Hospital's personnel and operations. The parties discussed certain narrowing proposals related to RFPs 1-3 and 5. At my request, the DOJ agreed to memorialize in a follow-up email various limitations it agreed to during the conversation.

9. The parties also discussed the Subpoena's request for confidential patient information. The DOJ explained its view that it is entitled to confidential patient information. The DOJ also explained that, in the event Children's Hospital attempted to produce de-identified patient records, the DOJ would insist on maintaining a right to "unmask" and identify any patient it desired.

10. Toward the end of the meet and confer, the DOJ acknowledged the eleven-day delay between the date the Subpoena was signed and when it was served on Children's Hospital. The DOJ acknowledged that the delay was brought about solely by the DOJ's conduct.

11. On July 30, 2025, Mr. Dahlquist e-mailed my colleagues and I to confirm the Subpoena limitations discussed on the prior meet-and-confer call. A true and correct copy of Mr. Dahlquist's email is attached hereto as **Exhibit 2.**

12. On August 1, 2025, I responded to Mr. Dahlquist's email. Among other things, due to the DOJ's delay in serving the Subpoena, I requested on behalf of Children's Hospital a commensurate extension to the response deadline, which would move Children's Hospital's response date from August 7 to August 18, 2025. A true and correct copy of my August 1, 2025 email to Mr. Dahlquist and his colleagues is attached hereto as **Exhibit 3**.

13. On August 5, 2025, Mr. Dahlquist responded to my August 1 email and agreed to extend Children's Hospital's subpoena response deadline to August 18. A true and correct copy of Mr. Dahlquist's email is attached hereto as **Exhibit 4.**

14. On August 6, 2025, I responded to Mr. Dahlquist's email and requested a further meet and confer.  A true and correct copy of my August 6, 2025 email to Mr. Dahlquist and his colleagues is attached hereto as **Exhibit 5**.

15. On August 7, 2025, my colleagues and I conferred over video and phone with counsel for the DOJ; specifically, Scott Dahlquist, Jordan Campbell, David Gunn, Ross Goldstein, and Steve Scott.  Mr. Peters informed counsel for the DOJ that Children's Hospital would be moving to quash the Subpoena and to restrict the filings, and provided the expected bases for the motion to quash.  We asked the DOJ attorneys if the DOJ was willing to withdraw the Subpoena.  Counsel for the DOJ, including Mr. Dahlquist and Mr. Campell, stated that they were not willing to withdraw the Subpoena and would oppose both the motion to quash and the motion to restrict.

16. Attached hereto as **Exhibit 6** is a true and correct copy of Presidential Executive Order No. 14168, dated January 20, 2025, entitled "Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government."

17. Attached hereto as **Exhibit 7** is a true and correct copy of Presidential Executive Order No. 14187, dated January 28, 2025, entitled "Protecting Children From Chemical and Surgical Mutilation."

18. Attached hereto as **Exhibit 8** is a true and correct copy of a memorandum from Attorney General Pam Bondi to the Department of Justice, dated April 22, 2025, entitled "Preventing the Mutilation of American Children."

19. Attached hereto as **Exhibit 9** is a true and correct copy of a memorandum from Assistant Attorney General Brett A. Shumate to all Department of Justice Civil Division Employees, dated June 11, 2025, entitled "Civil Division Enforcement Priorities."

20. Attached hereto as **Exhibit 10** is a true and correct copy of a press release issued by the Department of Justice on July 9, 2025, entitled "Department of Justice Subpoenas Doctors and Clinics Involved in Performing Transgender Medical Procedures on Children."

21. Attached hereto as **Exhibit 11** is a true and correct copy of a press release issued by The White House on July 25, 2025, entitled "President Trump Promised to End Child Sexual Mutilation—and He Delivered."

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on August 8, 2025, in Berkeley, California**.**

_Cody Gray_
Cody Gray