FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
8/8/2025
JEFFREY P. COLWELL, CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Misc. Case No.

**In re: Department of Justice Administrative Subpoena No. 25-1431-030**

---

## CHILDREN'S HOSPITAL COLORADO'S MOTION TO RESTRICT

---

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ........................................................................................... ii

II.    LEGAL STANDARD .................................................................................... 4

III.    ARGUMENT ................................................................................................ 5

   A.    Restriction is necessary to protect the privacy of Children's Hospital's patients and providers and avoid exacerbating fear and disruption in the Children's Hospital community. . 5

   B.    Confidentiality is necessary to ensure the safety of Children's Hospital's facilities, patients, and personnel. ................................................................................... 8

IV.    CONCLUSION ........................................................................................... 11

3025422

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Doe v. Allegheny Cnty. Hous. Auth.*,
    No. 23-1105, 2024 WL 379959 (3d Cir. Feb. 1, 2024) ..........................................................8

*Globe Newspaper Co. v. Sup. Ct. for Norfolk Cty.*,
    457 U.S. 596 (1982)..............................................................................................................5

*Harte v. Burns*,
    No. 13-2586-JWL, 2020 WL 1888823 (D. Kan. Apr. 16, 2020)...........................................7

*JetAway Aviation, LLC v. Bd. of Cnty. Comm'rs of Cnty. of Montrose*,
    754 F.3d 824 (10th Cir. 2014) ..............................................................................................4

*M.M. v. Zavaras*,
    939 F. Supp. 799 (D. Colo. 1996) .........................................................................................5

*Mann v. Boatright*,
    477 F.3d 1140 (10th Cir. 2007) ............................................................................................4

*Nixon v. Warner Commc'ns, Inc.*,
    435 U.S. 589 (1978)..............................................................................................................4

*Russell v. Lanier*,
    404 Fed. App'x. 288 (10th Cir. 2010) ..................................................................................5

*United States v. C.D.*,
    848 F.3d 1286 (10th Cir. 2017) ............................................................................................8

*United States v. Dillard*,
    795 F.3d 1191 (10th Cir. 2015) ............................................................................................5

*United States v. Doe*,
    655 F.2d 920 (9th Cir. 1980) ................................................................................................5

*United States v. Harris*,
    890 F.3d 480 (4th Cir. 2018) ................................................................................................5

*United States v. Hickey*,
    767 F.2d 705 (10th Cir. 1985) ..............................................................................................4

3025422

*United States v. McVeigh*,
   119 F.3d 806 (10th Cir. 1997) ...................................................................4

*Washington v. Trump*,
   768 F. Supp. 3d 1239 (W.D. Wash. 2025)..............................................10

**Statutes**

18 U.S.C. § 3486.............................................................................................8

**Other Authorities**

Brandy Zadrozny, Ben Collins, and Tom Winter, *FBI Charges Massachusetts
   Woman with Boston Children's Hospital Bomb Threat*, NBC NEWS (Sept.
   15, 2022) .................................................................................................9

Casey Parks, *Doctors who treat trans patients say threats worsened after Trump's
   orders*, Washington Post (March 9, 2025)..............................................10

Ina Fried, *Report Details Online Harassment of Trans Healthcare Providers*,
   AXIOS (Dec. 13, 2022) ...........................................................................9

Katie O'Connor, *Gender-Affirming Clinics Subject to Onslaught of Threats,
   Harassment*, PSYCHIATRY ONLINE (Jan. 27, 2023) .............................9

Kevin B. O'Reilly, *Terrifying bomb threats against children's hospitals must
   stop*, American Medical Association (Oct. 6, 2022)................................9

3025422

## I.    INTRODUCTION

On July 14, 2025, the United States Department of Justice ("DOJ") served a sprawling, fifteen-category administrative subpoena (the "Subpoena") on Children's Hospital Colorado ("Children's Hospital") seeking vast quantities of information regarding gender-affirming care. The provision of that care is lawful in Colorado and Children's Hospital provides it responsibly, pursuant to strict guidelines, in full compliance with Colorado law, and consistent with the recommendations of the American Medical Association and the American Academy of Pediatrics.  In meet and confer calls, the DOJ attorneys handling the matter acknowledged that they have no reason to suspect any form of wrongdoing by Children's Hospital, or any evidence of misconduct by Children's Hospital or anyone connected with it.  They also acknowledged that the Subpoena was served to further the objectives of two enjoined presidential Executive Orders that were found to be motivated by purposeful discrimination, and a memorandum from the Attorney General deriding gender-affirming care as "mutilation" and "abuse" and promising to use the DOJ's vast resources to eliminate it.

The Subpoena was plainly designed to intimidate and harass Children's Hospital into stopping its lawful provision of gender-affirming care to transgender youth and was issued because the Administration disagrees with Colorado's decision to support that form of healthcare.  The Subpoena is also clearly designed to strike fear in patients and providers who are receiving and administering gender-affirming care by sending them the message that "the government is watching them" and their names and records are on the government's radar.  But there is no federal law that prohibits or criminalizes the receipt or provision of gender-affirming

3025422

care.  And Children's Hospital cannot properly be subject to a burdensome and harassing subpoena for providing care that is safe, effective, and allowed under Colorado law.

Accordingly, on August 8, 2025, concurrently with the filing of this motion, Children's Hospital moved to quash the Subpoena in its entirety due to the absence of a proper purpose and because it is unauthorized, overbroad, and unduly burdensome.  Children's Hospital now moves for an order maintaining Level 1 restriction over: (1) this case in its entirety, including (2) its Motion to Quash and supporting papers; (3) the instant Motion to Restrict and supporting papers, and (4) all subsequent filings in this proceeding.  *See* D.C.COLO.LCivR 7.2.

Maintaining Level 1 restriction is appropriate for two reasons.  First, confidentiality is necessary to protect the privacy of Children's Hospital's patients and personnel and to avoid exacerbating the fear and disruption the Subpoena has already provoked amongst the Children's Hospital community.  Children's Hospital has acknowledged receipt of the Subpoena but has not disclosed its contents publicly and has assured patients that it is not making changes to its care model at the present time.  Yet patients are already demanding that Children's Hospital not transmit confidential medical information to the Administration, out of concern for their privacy and anxiety about how their medical information will be used.  Patients are also foregoing care that they would otherwise obtain and expressing fear about the possibility of being stigmatized and targeted by those who do not support the transgender community.  Children's Hospital's providers are likewise expressing fear about the possibility of being subjected to litigation—even though the provision of gender-affirming care is lawful in Colorado—and that distress and anxiety is impacting their working environment.  This fear and disruption would increase significantly if it were publicly known that the DOJ is seeking, for example, the identity and

2

records of every patient that received puberty blockers or hormone treatments since 2020, the complete personnel files of scores of Children's Hospital personnel, and virtually every internal and external communication Children's Hospital personnel have had relating to gender-affirming treatment. There is no need to further traumatize patients and providers and further disrupt Children's Hospital's operations before the Court has had a chance to rule on the propriety of the DOJ's Subpoena.

Second, confidentiality is necessary to ensure the safety of Children's Hospital's facilities, patients, and personnel. The provision of gender-affirming care to minors is a hot-button issue. Threats of violence against facilities and providers that provide such care are, unfortunately, commonplace. Maintaining the confidentiality of these proceedings will reduce the risk that the Children's Hospital community will be targeted by those who disagree with Children's Hospital's decision to provide gender-affirming care to transgender youth, and who disagree with Children's Hospital's decision to challenge the DOJ and the Administration by moving to quash the Subpoena.

No practical alternative to Level 1 restriction over the motion to quash, the instant motion, and the associated papers exists because each filing, respectively, implicates these privacy and safety concerns by discussing in detail the contents of the Subpoena and Children's Hospital's provision of gender-affirming care to transgender youth. Children's Hospital also respectfully requests that these proceedings remain sealed so that Children's Hospital can litigate the propriety of the DOJ's investigation while protecting its patients and personnel. If these proceedings remain sealed and the Court grants Children's Hospital's motion to quash the Subpoena, the order would spare Children's Hospital's patients and providers the foregoing injuries and ensure that an already

3

vulnerable group of patients and providers does not become the object of further stigmatization and

attacks.  Unless Children's Hospital is able to litigate its challenge to the Subpoena under seal, that

will not be possible.  For these reasons, and those discussed below, the Court should maintain

Level 1 restriction as proposed in this motion.[1]

## II.    LEGAL STANDARD

There is a well-established common-law right of access to judicial records, *see Nixon v.

Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978), but it "is not absolute[,]" *Mann v. Boatright*,

477 F.3d 1140, 1149 (10th Cir. 2007).  Documents may be restricted where, as here, the public's

right of access is outweighed by privacy or safety interests which favor nondisclosure.  *See United

States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997).  The presumption against restriction may

be overcome if the party seeking to restrict access to records "articulate[s] a real and substantial

interest that justifies depriving the public of access to the records that inform [the Court's]

decision-making process." *JetAway Aviation, LLC v. Bd. of Cnty. Comm'rs of Cnty. of Montrose*,

754 F.3d 824, 826 (10th Cir. 2014) (citation omitted).  Whether to restrict the public's right to

access judicial records is within the district court's discretion.  *Id.*; *see also United States v. Hickey*,

767 F.2d 705, 708 (10th Cir. 1985).

In this District, Civil Local Rule 7.2(c) requires a party seeking restriction to:

> (1) identify the document or the proceeding for which restriction is sought; (2)
> address the interest to be protected and why such interest outweighs the
> presumption of public access . . . ; (3) identify a clearly defined and serious
> injury that would result if access is not restricted; (4) explain why no
> alternative to restriction is practicable or why only restriction will adequately
> protect the interest in question . . .; and (5) identify the level of restriction
> sought.  D.COLO.LCivR 7.2(c)

---

[1] Children's Hospital understands that notice of this motion will be posted publicly on the Court's
website pursuant to D.COLO.LCivR 7.2(d).

### III.    ARGUMENT

#### A.    Restriction is necessary to protect the privacy of Children's Hospital's patients and providers and avoid exacerbating fear and disruption in the Children's Hospital community.

The Tenth Circuit has long "recognized that the privacy interest inherent in personal medical information can overcome the presumption of public access."  *United States v. Dillard*, 795 F.3d 1191, 1205–06 (10th Cir. 2015) (citing *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.,* 663 F.3d 1124, 1135–36 (10th Cir. 2011) (approving the filing under seal of files containing private medical information)); *see also Russell v. Lanier*, 404 Fed. App'x. 288, 289 n.2 (10th Cir. 2010) (recognizing the "sensitive nature" of medical information).    Indeed, in certain circumstances, enforcing "privacy interests" may "be in the public interest."  *M.M. v. Zavaras*, 939 F. Supp. 799, 801–02 (D. Colo. 1996).  Moreover, courts recognize an individual's interest in their "psychological well-being" as a basis for sealing, especially where that individual is a minor. *Globe Newspaper Co. v. Sup. Ct. for Norfolk Cty.*, 457 U.S. 596, 607 (1982) ("[S]afeguarding the physical and psychological wellbeing of a minor [] is a compelling [interest.]"); *United States v. Harris*, 890 F.3d 480, 492 (4th Cir. 2018) ("[A]n interest in protecting the physical and psychological well-being of individuals related to the litigation, including family members and particularly minors, may justify restricting access.").    Courts have also recognized that "protect[ing] a person from harassment, injury, ridicule or personal embarrassment" may be a basis for overcoming the presumption of public access. *United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1980) (favoring the appellant's anonymity over the presumption that parties' identities are public information).

Here, confidentiality is necessary to protect the privacy, psychological well-being, and orderly functioning of Children's Hospital.  Although Children's Hospital has confirmed that it received a subpoena, the details of the Subpoena and extent to which the Administration seeks to intrude on confidential patient medical information will deeply harm an already vulnerable population and their families.  *See* Declaration of David Brumbaugh, M.D. ("Brumbaugh Decl.") ¶¶ 27–36.  Among other things, public disclosure would compromise the integrity of the Children's Hospital clinic (the "TRUE Center") that serves transgender patients and their families by jeopardizing its role as a safe and supportive environment for transgender youth.  *See id*. ¶¶ 15–17, 27–33.  Patients seek care from the TRUE Center after experiencing psychological challenges, prejudice, and discrimination in connection with their gender-identity.  *See id*. ¶ 31.  Having endured those challenges, patients often turn to the TRUE Center as a place that can provide security, where they can be their authentic selves and share information without fear of repercussions.  *See id*. ¶ 16.  A patient's initial consultation at the TRUE Center begins with a consultation with a behavioral health clinician, who obtains information about the patient's social, mental, and developmental histories.  *Id*. ¶¶ 13–21.  Patients and families subsequently participate in a comprehensive discussion with an expert medical provider who assesses the patient's medical history and the family's goals.  *Id*.  The medical records reflecting this information are among the most sensitive that Children's Hospital maintains.  *Id*. ¶ 31; *see also id*. ¶¶ 27–33.

TRUE Center patients have already expressed fear and panic that they will lose access to critical care based on the fact of the Subpoena alone, *see id*. ¶ 32; exposing the depths of the DOJ's efforts to obtain their most sensitive medical information will traumatize them, ignite fear and

3025422

anxiety, and jeopardize their health and well-being.  *See id.* ¶¶ 29–33, 35–36.  There is no need to do that before the Court issues a ruling on the propriety of the DOJ's Subpoena.

Moreover, the fact that patient records could be disclosed to the DOJ specifically—which has explicitly embraced its role in the Administration's attack on transgender youth—would further undermine the trust fundamental to the relationship between the TRUE Center and its patients.  *See id.* ¶ 33.  A significant number of Children's Hospital patients have already demanded that Children's hospital not transmit their medical records to the Administration, precisely because they fear what the DOJ would do with that information.  *See id.* ¶¶ 30, 36.

Public disclosure of these proceedings would also deter future patients from seeking the critical care and support they need out of fear that they will be targeted by the Administration.  *See id.* ¶¶ 31–33.  This is happening already, based on the totality of the Administration's recent actions and the mere acknowledgment of the Subpoena.  *See id.* ¶¶ 27–29, 36.  The TRUE Center had a six-month waitlist for an appointment in January; now, the waitlist does not exist.  *See id.* ¶ 36.  When transgender youth are willing and able to access to appropriate healthcare, it improves their psychological well-being.  *See id.* ¶ 23.  Public disclosure would further chill future patients' willingness to seek care from the TRUE Center, causing needless injury to those patients.  *See id.* ¶ 36.

Courts in this Circuit have recognized that disclosing information about medical treatment and therapy "'will work a clearly defined and serious injury' to [] minor[s]."  *See Harte v. Burns*, No. 13-2586-JWL, 2020 WL 1888823, at *2 (D. Kan. Apr. 16, 2020) (quoting *United States v. Walke*r, 761 F. App'x 822, 834 (10th Cir. 2019)).  So too would disclosing the details of an administrative subpoena demanding such information—particularly, where, as here, it has been

issued by a DOJ that has publicly espoused the medically-inaccurate and debasing view that the gender-affirming care these individuals receive constitutes "mutilation" and "abuse." *See* Mot. at 1; Brumbaugh Decl. ¶ 31.

Restriction is also appropriate to protect the well-being of Children's Hospital's providers and, by extension, the orderly operations of Children's Hospital. Several providers have already expressed anxiety and fear about the possibility of being subjected to a meritless civil or criminal prosecution by this Administration—even though it is lawful in Colorado to provide gender-affirming care. *See* Brumbaugh Decl. ¶ 34. The mere fact of the Subpoena has traumatized Children's Hospital's providers and disrupted their ability to do their jobs free of anxiety and intimidation. *See id*. ¶¶ 34–35. Public disclosure of these proceedings at this juncture would only needlessly exacerbate those injuries.[2] The proceedings should remain sealed.

**B.     Confidentiality is necessary to ensure the safety of Children's Hospital's facilities, patients, and personnel.**

This Court should also maintain Level 1 restriction to ensure the safety of Children's Hospital's facilities, patients, and personnel. Courts have previously recognized that safety concerns are "a real and substantial interest" justifying restricting public access. *See United States v. C.D.*, 848 F.3d 1286, 1288 (10th Cir. 2017) (granting Defendants' motions to seal appellate documents "[d]ue to safety concerns"); *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105,

---

[2] To the extent the DOJ argues that 18 U.S.C. § 3486, the authority under which DOJ issued the Subpoena, does not authorize sealed proceedings, or that the statute protects patient data by setting forth procedures for the government to follow before disclosing health information obtained via subpoena, these arguments miss the point. This motion seeks to restrict the filings in this case because the potential disclosure of the Subpoena itself and the pleadings discussing Children's Hospital's operations implicate serious privacy and safety concerns for patients, providers, and Children's Hospital personnel.

8

2024 WL 379959, at *3 n.5 (3d Cir. Feb. 1, 2024) (citing Plaintiff's "physical safety" when granting motion to seal).

Here, there is a "real and substantial" interest in protecting the safety of Children's Hospital's patients and personnel due to the risk that these individuals will be targeted by those who disagree with Children's Hospital's decision to provide gender-affirming care to minors, and by those who disagree with Children's Hospital's decision to challenge the DOJ and this Administration by moving to quash the Subpoena. *See* Brumbaugh Decl. ¶¶ 30–36.

These fears are not speculative. Several hospitals have attracted protesters with violent messages, including messages conveying that providers who administer gender-affirming care are harming children. *Id.* ¶ 35. Disclosure of the Subpoena and these proceedings would likely exacerbate such harassment. *See id.*

Importantly, several hospitals and individual providers who provide gender-affirming care have also received serious threats of violence. Katie O'Connor, *Gender-Affirming Clinics Subject to Onslaught of Threats, Harassment*, PSYCHIATRY ONLINE (Jan. 27, 2023), https://psychiatryonline.org/doi/10.1176/appi.pn.2023.03.2.5. Boston Children's Hospital, for example, received "well over a dozen" bomb threats in connection with what the U.S. Attorney for Massachusetts characterized as "a sustained harassment campaign based on dissemination of information online" about gender-affirming care provided by the hospital. Brandy Zadrozny, Ben Collins, and Tom Winter, *FBI Charges Massachusetts Woman with Boston Children's Hospital Bomb Threat*, NBC NEWS (Sept. 15, 2022), https://www.nbcnews.com/tech/internet/fbi-charges-massachusetts-womanboston-childrens-hospital-bomb-threat-rcna47973. In addition, specific providers have also been targeted. Ina Fried, *Report Details Online Harassment of Trans*

9

*Healthcare Providers*, AXIOS (Dec. 13, 2022), https://www.axios.com/2022/12/13/online-harassment-trans-healthcare-providers-report.

In response to these rising threats of violence, the American Academy of Pediatrics (AAP), the American Medical Association (AMA), and the Children's Hospital Association (CHA) previously asked then-Attorney General Merrick Garland and the DOJ to investigate these attacks and the social media platforms facilitating the spread of misinformation about such care. Kevin B. O'Reilly, *Terrifying bomb threats against children's hospitals must stop*, American Medical Association (Oct. 6, 2022), https://www.ama-assn.org/practice-management/physician-health/terrifying-bomb-threats-against-childrens-hospitals-must-stop. And in the wake of the Administration's Executive Order 14,187 (the "Medical Services EO"), announcing that "it is the policy of the United States that it will not fund, sponsor, promote, assist, or support the so-called 'transition' of a child from one sex to another, and it will rigorously enforce all laws that prohibit or limit these destructive and life-altering procedures[,]" *see* Declaration of Cody Gray ("Gray Decl."), Ex. 6 at 1, threats of violence have continued to rise, creating a working environment that has become "untenable" for providers, some of whom have expressed concerns that the Executive Order is "attempting to incite violence" against them, and forcing them to consider whether they can even continue to be a doctor in the United States. *See* Casey Parks, *Doctors who treat trans patients say threats worsened after Trump's orders*, Washington Post (March 9, 2025), https://www.washingtonpost.com/nation/2025/03/09/doctors-transgender-safety-threats-trump (referencing the statements made by dozens of providers who gave sworn affidavits in *Washington v. Trump*, 768 F. Supp. 3d 1239 (W.D. Wash. 2025), *see* Mot. at 5).

10

3025422

In short, the possibility of physical attacks on Children's Hospital and its community are far from hypothetical—and would become only more tangible through disclosure of these proceedings. Restriction is thus necessary to protect the safety of Children's Hospital's facilities, patients, and personnel.

**IV.    CONCLUSION**

For the reasons stated above, Children's Hospital respectfully requests that the Court maintain Level 1 restriction over: (1) this case in its entirety; (2) its Motion to Quash, the Gray Declaration and its exhibits, the Brumbaugh Declaration, and the proposed order; (3) the instant Motion to Restrict and its proposed order, and (4) all subsequent filings in this proceeding. Children's Hospital submits, along with its motion, a proposed order.

11

3025422

## <u>Certificate of Conferral Under D.C.COLO.LCivR 7.1(a)</u>

On August 7, the parties met and conferred regarding this Motion.  The DOJ informed

counsel for Children's Hospital that they oppose the Motion.

Respectfully submitted,

Dated: August 8, 2025          By:     */s/ Elliot R. Peters*  _____

Elliot R. Peters
*epeters@keker.com*
Cody Gray
*cgray@keker.com*
Katherine S. Folly
*kfolly@keker.com*
Aseem Mehta
*amehta@keker.com*
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415-391-5400
Facsimile:     415-397-7188

*Attorneys for Children's Hospital Colorado*

3025422