IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 25-mc-00063-SKC

IN RE: DEPARTMENT OF JUSTICE ADMINISTRATIVE SUBPOENA No. 25-1431-030

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO CHILDREN'S HOSPITAL COLORADO'S MOTION TO RESTRICT**

Without meeting the legal standard for sealing even its initial filing (or portions thereof) let alone the complete docket, Children's Hospital of Colorado ("CHC") asks to litigate a matter of significant importance that it initiated against the United States entirely in secret. In support of its extraordinary request, CHC attempts to apply standards governing the restricting of materials that may arise in litigation as a basis to restrict, in its entirety, litigation opposing the production about those materials. CHC also relies on unspecified or past concerns about harassment as to other entities as a basis to argue that if litigation over a subpoena to CHC should be held in secret. The hospital does not identify a source of law that would permit restriction, nor has it identified privileged, confidential, or sensitive pieces of information in the judicial records it seeks to seal that can overcome the presumption of public access. CHC's motion to permit it litigate behind closed doors should be denied in its entirety.

**ARGUMENT**

Unless restricted by statute, rule of civil procedure, or court order, the public shall have access to all documents filed with the court and all court proceedings. D.C.COLO. LCivR 7.2. "Indeed, the Judicial Conference of the United States has emphasized that 'sealing an entire case is a last resort,' that should be done only when 'required by statute or rule or justified by a

showing of extraordinary circumstances and the absence of narrower feasible and effective alternatives (such as sealing discrete documents or redacting information).'" *Black v. Emerson*, 2025 U.S. Dist. LEXIS 109109, *8 (D. Colo. June 9, 2025) (citing Judicial Conference of the United States, *Judicial Conference Policy on Sealed Cases* (Sept. 13, 2011)). Consistent with these policy principles, D.C.COLO.LCivR 7.2 places substantial requirements upon a party seeking to override the right to public access and public inspection. CHC has not met the legal standard for restricting the entire matter, nor any particular element of its filings. It cannot prevail in its request to restrict the case because it has simply not met the requirements of the rule.

CHC conflates multiple issues when presenting speculative and vague fears of being targeted and justify sealing the entire proceedings, but it does not identify a "clearly defined and serious injury that would result" and, critically, it fails to explain why "no alternative to restriction is practicable or why only restriction will adequately protect the interest in question." D.C.COLO.LCivR 7.2(c)(3) and (4). CHC does not identify a source of law that would permit the Court to deprive the American public of its right of access, nor has it specifically identified any privileged, confidential, or sensitive pieces of information in its filings. Having failed to rise above the high hurdle of the rule and the public's right to access, CHC's motion to convene its opposition in wholly secret proceedings should be denied. *See RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, 2020 U.S. Dist. LEXIS 259164, *22 (D. Colo. Sept. 30, 2020).

**I.     There are no specific, compelling, countervailing interests that can overcome the strong presumption of openness of judicial records to the public.**

Under the common law, "judicial documents are presumptively available to the public." *United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997). This common law right "is not absolute" and can be outweighed by significant interests of nondisclosure. *JetAway Aviation,*

*LLC v. Bd. of Cnty. Comm'rs of Cnty. of Montrose, Colo.*, 754 F.3d 824, 826 (10th Cir. 2014) (quoting *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007)); see also *McWilliams v. DiNapoli*, 40 F.4th 1118, 1130 (10th Cir. 2022) ("[T]he party seeking to seal a judicial record must show 'some significant interest that outweighs' the public interest in access to the records." (quoting *Helm v. Kansas*, 656 F.3d 1277, 1292 (10th Cir. 2011))). These interests must be "real and substantial," and the movant bears a "heavy" burden. *McWilliams*, 40 F.4th at 1130-31 (quoting *Helm*, 656 F.3d at 1292–93).

"Although courts have discretion, sealing litigation documents, to say nothing of entire cases, is disfavored in the United States." *Black v. Emerson*, 2025 U.S. Dist. LEXIS 109109, *8 (D. Colo. June 9, 2025) (citing *Miller v. Fluent Home, LLC*, No. 2:20-cv-00641, 2020 U.S. Dist. LEXIS 175699, 2020 WL 5659051, at *1 (D. Utah Sept. 23, 2020) (denying request to restrict entire case, while granting motion for limited restriction)). "Judges have a responsibility to avoid secrecy in court proceedings because 'secret court proceedings are anathema to a free society.'" *Murphy v. Schaible, Russo & Co.*, 2020 U.S. Dist. LEXIS 260738, *2 (D. Colo. Jan. 7, 2020) (citing *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996)). "There is a presumption that documents essential to the judicial process are to be available to the public, but access to them may be restricted when the public's right of access is outweighed by interests which favor nondisclosure." *Id.*

Furthermore, the people's interest in their right of access is heightened when their government is litigating on their behalf; as other Courts of Appeals have pointed out: "The appropriateness of making court files accessible is accentuated in cases where the government is a party: in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch." *FTC v.*

*Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987); *see also EEOC v. Nat'l Children's Ctr.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) (noting that fact that government agency was litigating party and objected to sealing, "strengthens the already strong case for access"); *Doe v. Public Citizen*, 749 F.3d 246, 271 (4th Cir. 2014) ("The interest of the public and press in access to civil proceedings is at its apex when the government is a party to the litigation.").

CHC has not met it's "heavy burden" to "articulate a real and substantial interest that justifies depriving the public of access to the records that inform [the Court's] decision-making process." *Helm v. Kansas*, 656 F.3d 1277, 1292–1293 (10th Cir. 2011). Instead, CHC argues that because personal medical information is called for by the lawfully-issued subpoena, the entire litigation regarding the subpoena must be restricted. But the subpoena does not call for the public production of information to be published in this Court, and so CHC's rationale to restrict the entire docket is misplaced. Indeed, the cases CHC cites in support of its theory are not cases where the entire docket was restricted. Instead, as is appropriate in this case, litigation over the production of potentially sensitive materials should be conducted in the open. Most significantly, CHC fails to "identify a clearly defined and serious injury that would result if access is not restricted" and by failing to "explain why no alternative to restriction is practicable or **why only restriction** will adequately protect the interest in question." D.C.COLO.LCivR 7.2(c)(3) and (4) (emphasis added). CHC does not identify any specific injury that will result if access to litigation over the production of records is not restricted; as such CHC cannot explain why only restriction will prevent such a specific injury.

Here, CHC seeks to restrict from public view every document in this matter. "This is an affront to the public right of access to judicial proceedings and judicial documents." *Black v. Emerson*, 2025 U.S. Dist. LEXIS 109109 (D. Colo. June 9, 2025). "The public's access to

information is paramount to our justice system, as it encourages the public's confidence in the decision-making of judiciary—and this court takes its role in ensuring such public access seriously." *Ledezma v. Young Life*, No. 20-cv-01896-NYW, 2021 U.S. Dist. LEXIS 129616, 2021 WL 2823261, at *10 (D. Colo. Jan. 8, 2021). "Indeed, sealing an entire case, as opposed to simply certain documents within a case, is especially disfavored because doing so 'conceal[s] the very existence of lawsuits from the public.'" *Emerson* at 9 (citing *Standard Chartered Bank Int'l (Am.) Ltd. v. Calvo*, 757 F. Supp. 2d 258, 260 (S.D.N.Y. 2010). The court in *Emerson* cited extensively to *Standard Chartered Bank*, noting that it was "unequivocal in is rejection of the attempt to keep secret the use of the public resources of the federal court." *Emerson* at 12.

CHC has failed to carry its heavy burden to justify such extraordinary measures. The reasons CHC offers in its motion far fall short its "heavy burden" and does not satisfy the "real and substantial interest" requirement. The hospital claims that seeking judicial intervention behind a curtain of secrecy is necessary to protect the privacy and describes a number of fears and anxiety generally suffered by members of the transgender community; or it points to generalized fears based on unrelated, historic threats unrelated to this action. vague and unsubstantiated fears of patients that they might be "surveilled or targeted for exposure by opponents" of gender related care or might choose to forgo further treatment. Decl. of David Brumbaugh at ¶¶ 33–36. But CHC offers no first-hand evidence of those (intangible) fears, or any non-conjectural, factual basis specifically tethered to this action (that CHC itself initiated) that would enable the Court to make the specific findings necessary to override the public's right of access, nor evidence to show why restricting access is the only means to ameliorate such generalized concerns.

CHC's conflation of producing records called for in the challenged subpoena with public access to those records misplaces the argument and applies the wrong standard for restricting access to this matter. It is true that an individual's private health information is routinely protected from public disclosure in litigation. But what CHC argues is that because the United States is seeking information related to CHC's provision of medical interventions to minors, the very existence of its challenge must be kept secret. This argument stretches too far because the records called to be produced are not going to be publicly available. Rather, as discussed below, the subpoena power itself is borne out of a statute enhancing privacy afforded to medical records and creates safeguards for their use by the United States in an investigation.

CHC also speculates that if the public were to learn that it has brought this action against the government, that it might be affected by violence. Again, the hospital offers no actual factual evidence that violence would likely follow such disclosure. To be sure, CHC refers to threats of violence made in the past or against other providers, but none specific to CHC in the past and none specific to the lawfully-issued subpoena in question. Because CHC does not claim that these threats are specific to this matter, CHC naturally does not describe how restricting access to this litigation relates to threats made in the past or made against other facilities are cured by restricting this action. Such generalized, preexisting concerns are insufficient to meet the heavy burden to show how disclosure of this litigation over the validity of an administrative subpoena would cause hospital employees or patients—who cannot be identified through the judicial records here—to be subjected to violence. The generalized fear or anxiety and speculative possibility of physical harm merely because a person has learned that CHC received a subpoena does not suffice. The movant bears a heavy burden to demonstrate a real and substantial interest that outweighs the public interest in accessing the documents. *See McWilliams v. DiNapoli*, 40

F.4th 1118, 1130–31 (10th Cir. 2022) (denying motion to seal filed information for failing to explain why redactions would not suffice and ordering public filing except for personally identifying information such as home address, phone number, date of birth, or Social Security number). Vague and conclusory statements do not meet this burden. *Elevate Fed. Credit Union v. Elevations Credit Union*, 67 F.4th 1058, 1085 (10th Cir. 2023) (citing *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 547 (7th Cir. 2002)).

Moreover, CHC is already widely known as a provider of gender-related care to children and adolescents. It is also widely known that the Attorney General has directed the Department of Justice to investigate potential unlawful and fraudulent practices in the provision of such care to minors. CHC's submissions to this Court do not establish that public disclosure of this litigation would itself worsen or increase the risks it already faces. The existence of a governmental investigation into these practices has precious little to do with any harm that flows from CHC's already prominent visibility in this area.

It is imperative to keep in mind that what is at issue in this motion is not whether personal information of patients or employees will be exposed in this miscellaneous case—they will not— but rather whether the determination as to whether CHC must comply with the subpoena. Moreover, there is nothing in CHC's filings that could reasonably be considered sensitive or confidential. In this context, CHC's concerns about privacy and safety are untethered from the requirement of a moving party to identify a clearly defined and serious injury that would result if access is not restricted. *See* D.C.COLO.LCivR 7.2(c)(3).

**II.     There is no legal basis to seal the docket.**

The statute authorizing the subpoena at issue, 18 U.S.C. § 3486, has numerous privacy-related provisions, none of which authorize sealing the docket or keeping an administrative

subpoena secret.[1] Indeed, the statute at issue here generally prohibits the government from using or sharing protected health information about a patient for use against that patient. 18 U.S.C. § 3486(e). The statute allows the government—but not the subpoena recipient—to seek a nondisclosure order preventing the subpoena recipient from revealing the existence of the subpoena. 18 U.S.C. § 3486(a)(6).

Hence, Congress obviously had privacy on its mind when it enacted the statute and could have provided for administrative subpoenas issued under the statute to remain secret. It did not do so. Similarly, Congress obviously knows how to make similar investigative proceedings secret, such as *qui tam* investigations. See 31 U.S.C. §§ 3730(b)(2), (b)(3) (initial 60-day sealing period and government seal extension requests to permit confidential government investigation of allegations). But with HIPAA subpoenas, Congress specifically chose not to do so. Because courts must "presume that [Congress] says in a statute what it means and means in a statute what it says there," *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992), this Court's inquiry should begin and end with the statute.

If anything, Congress's decision to cloak grand jury investigations in secrecy highlights the distinction—not the similarity—between such subpoenas and the one at issue here, undercutting CHC's argument. Since neither Congress nor the courts have conferred secrecy on administrative subpoenas, general, public awareness of their issuance provides no basis for sealing. See *United States v. ISS Marine Svcs., Inc.*, 905 F. Supp. 2d 121, 141 (D.D.C. 2012) (unsealing record of administrative subpoena enforcement proceedings and noting that

---

[1] The administrative subpoena at issue here is colloquially called a "HIPAA subpoena," reflecting its origin in legislation enacted as part of the Health Insurance Portability and Accountability Act.

"revealing the fact that [the subpoena recipient] is the subject of some kind of government investigation" is "unavailing" as a reason to seal docket).

To be clear, the United States acknowledges that the subject matter of the subpoena and this litigation implicates sensitive privacy interests. But CHC urges the Court to enact a sweeping rule that this entire proceeding must be kept secret simply because the subject matter is controversial and involves medical treatment. Yet many government investigations address contentious issues, and virtually all medical records contain sensitive information. Under the hospital's logic, any litigation touching on a debated medical practice would necessarily proceed in secrecy in contravention of the public's strong right of access, effectively entitling medical providers to sealed dockets whenever they litigate about a controversial or publicly debated medical procedure—an exception to the public's right to acquire information about judicial proceedings that is untenable.

Finally, as this court has recognized, "the Judicial Conference of the United States has emphasized that 'sealing an entire case is a last resort,' that should be done only when 'required by statute or rule or justified by a showing of extraordinary circumstances and the absence of narrower feasible and effective alternatives (such as sealing discrete documents or redacting information).'" *Black v. Emerson*, 2025 U.S. Dist. LEXIS 109109, *8 (D. Colo. June 9, 2025) (citing Judicial Conference of the United States, *Judicial Conference Policy on Sealed Cases* (Sept. 13, 2011)  available at https://www.uscourts.gov/sites/default/files/judicialconference-policysealedcivilcases2011.pdf)). This case does not meet the Judicial Conference's criteria of extraordinary circumstances necessary for sealing.

## CONCLUSION

-9-

For the reasons explained above, the United States respectfully requests that the Court deny CHC's motion to seal in its entirety. The government stands ready and willing to meet and confer with the hospital about sealing, redacting, or protecting any protected health information or other confidential information in any future filings.

Dated this 29th day of August 2025.

Respectfully submitted,

**FOR THE UNITED STATES OF AMERICA**

BRETT SHUMATE
Assistant Attorney General

JORDAN C. CAMPBELL
Deputy Assistant Attorney General

SARMAD KHOJASTEH
Senior Counsel
Civil Division

LISA HSIAO
Acting Director

ROSS S. GOLDSTEIN
PATRICK RUNKLE
Assistant Directors

 /s/ Scott B. Dahlquist
**Scott B. Dahlquist**
Trial Attorney

United States Department of Justice
Consumer Protection Branch
P.O. Box 386
Washington, DC 20044
Tel:    202-532-4602
Fax:    202-514-8742
scott.b.dahlquist@usdoj.gov

Attorneys for the United States

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of August 2025, filed the foregoing with the Clerk of Court using the CM/ECF system, which caused the foregoing to be sent to:

    Elliot R. Peters
    epeters@keker.com

    Cody Gray
    cgray@keker.com

    Katherine S. Folly
    kfolly@keker.com

    Aseem Mehta
    amehta@keker.com

    KEKER, VAN NEST & PETERS LLP
    633 Battery Street
    San Francisco, CA 94111-1809
    Telephone: 415-391-5400
    Facsimile: 415-397-7188.

Dated this 29th day of August, 2025.

                                              /s/ *Scott B. Dahlquist*
                                            Scott B. Dahlquist