# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Case No. 25-mc-63-SKC-CYC

**In re: Department of Justice Administrative Subpoena No. 25-1431-030**

---

**CHILDREN'S HOSPITAL COLORADO'S RESPONSE TO THE UNITED STATES' OBJECTIONS TO THE RECOMMENDATION OF THE MAGISTRATE JUDGE**

---

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Children's Hosp. of Phil.*,
  2025 WL 3252648 (E.D. Pa. Nov. 21, 2025) ..................................................... 4, 7

*In re 2025 Subpoena to Children's National Hospital*,
  2026 WL 160792 (D. Md. Jan. 21, 2026) ............................................................. 4

*In re 2025 UPMC Subpoena*,
  2025 WL 3724705 (W.D. Pa. Dec. 24, 2025) ....................................................... 4

*In re Admin. Subpoena No. 25-1431-019*,
  800 F. Supp. 3d 229 (D. Mass. 2025) ............................................................ 4, 5, 8

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
  678 F.3d 235 (3d Cir. 2012) ................................................................................. 7

*In re Subpoena Duces Tecum No. 25-1431-016*,
  2025 WL 3562151 (W.D. Wash. Sept. 3, 2025) .................................................... 4

*Lynn v. Biderman*,
  536 F.2d 820 (9th Cir. 1976) ................................................................................ 9

*McLane Co. v. EEOC*,
  581 U.S. 72 (2017) ................................................................................................ 9

*Penelow v. Janssen Prods., L.P.*,
  No. 25-1818 (3d Cir.) ........................................................................................... 7

*QueerDoc, PLLC v. United States Dept. of Justice*,
  2025 WL 3013568 (W.D. Wash. Oct. 27, 2025) .................................................... 4

*QueerDoc, PLLC v. United States Dept. of Justice*,
  No. 25-7384 (9th Cir.) ........................................................................................... 7

*Trump v. Hawaii*,
  585 U.S. 667 (2018) ............................................................................................ 10

*United States v. LaSalle Nat'l Bank*,
  437 U.S. 298 (1978) .............................................................................................. 9

4086761

*United States v. Morton Salt Co.*,
    338 U.S. 632 (1950) .................................................................................................. 8

*United States v. One Parcel of Real Prop.*,
    73 F.3d 1057 (10th Cir. 1996) .................................................................................. 6

*United States v. Powell*,
    379 U.S. 48 (1964) .................................................................................................... 8

*United States v. Whispering Oaks*,
    673 F.3d 813 (8th Cir. 2012) .................................................................................... 8

*United States v. Wilson*,
    98 F.4th 1204 (10th Cir. 2024) ......................................................................... 2, 3, 8

**Other Authorities**

Civ. Prac. Std. 72.3(b) ..................................................................................................... 6

Fed. R. Civ. P. 72(a) ....................................................................................................... 5

ii

4086761

The Magistrate Judge in this case faithfully applied binding precedent, carefully analyzed an undisputed factual record, and correctly recommended quashing an administrative subpoena the DOJ served on Children's Hospital Colorado ("Children's Hospital").  *See* Dkt. 35 (the "Recommendation" or "Rec."). The government's objections to the Recommendation are baseless.  The Recommendation should be affirmed in its entirety.

**Response to Objection 1:** The government's first objection raises three points about the Recommendation's scope and relevance analyses. *See* Dkt. 36 ("Obj.") at 1–5.  Each contention lacks merit.

First, the government claims its requests *are* appropriately limited in scope because "[n]o drugs are FDA-approved for the treatment of gender dysphoria," and thus, in the government's eyes, the Subpoena "squarely targets off-label use." Obj. at 1–2.  But even if that were true, it wouldn't remedy the Subpoena's defects. "The FDCA . . . does not prohibit doctors from prescribing drugs for off-label uses." Rec. at 7.  And mindful of that fact, as the Recommendation found, the government's briefing, declaration (and, indeed, its Objections) "never deign[] to [actually] explain the government's investigation," "how the Subpoena is right-sized for it," "the propriety of the [] scope" of each request, or how specific requests tie back to a valid and statutorily-authorized investigation. Rec. at 6.

Further, upon consideration of the government's sole claimed investigatory justification in its opposition—whether drug "manufacturers and distributors

1

4086761

engaged in misbranding [in violation of the FDCA] by making false claims about the on- or off-label use of [puberty blockers or hormones]," Dkt. 10 at 7—the Subpoena's requests are undeniably untethered and/or flawed. *See* Dkt. 16 at 7–10; Rec. at 6–9. Request 1 seeks scores of immaterial hospital *personnel files*; Requests 2-3 seek *coding* and *billing* records for thousands of pediatric patients who received *any* kind of care *at all*; Requests 4-6 seek communications about *coding* and *billing*—not misbranding—despite the fact that it is legal to code and bill for gender-affirming care in Colorado; Requests 7-9 are "facially overbroad," Rec. at 7, as are Requests 10 and 14, which aren't directed to gender-affirming care at all, Dkt. 1-4 at 6-7; and, as the Recommendation correctly concluded, the remaining requests "create a dragnet designed to sweep in all patient data related to any prescription of puberty blockers or hormone therapy" whatsoever, Rec. at 7. The Recommendation's conclusion that DOJ failed to show the Subpoena is properly limited in scope, in short, is sound.

Second, the government insists the Recommendation improperly elevated its burden to justify its investigation at the "pre-indictment, investigative stage," where it claims it need not explain "*ex ante*, how particular categories of document [requests]" relate to a lawfully authorized investigation. Obj. at 2. This objection is meritless. The Recommendation faithfully applied binding circuit authority—*United States v. Wilson*, 98 F.4th 1204, 1221 (10th Cir. 2024)—requiring the government to make a prima facie showing that the "inquiry is within the [statutory] authority of the agency" and the Subpoena is "sufficiently limited in

2

scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome." *See* Dkt. 35 at 3–4 (quoting *Wilson*, 98 F.4th at 1221).

The government does not engage with the Recommendation's application of *Wilson,* nor does it dispute that it failed to provide evidence to justify the Subpoena or its breadth. Obj. at 2–5. Instead, the government invents a standard the Recommendation did not apply—"whether the requested materials will themselves establish a violation of federal law," Obj. at 2—and asserts the Recommendation should have relied on an out-of-context portion of a sentence from an out-of-circuit case to alleviate the government of its burden altogether. Obj. at 2–3. That argument fails. *Wilson* is on point and governs.

<u>Third</u>, the government disputes the Recommendation's conclusion that the Subpoena's requests are not reasonably "relevant" to a lawful FDCA misbranding investigation, claiming communications with drug manufacturers about puberty blockers are potentially relevant, and that it needs patient records to see if doctors gave "misleading" information when prescribing drugs for off-label use. Obj. at 4–5.

But the Recommendation's relevance analysis was dead-on. As an initial matter, the Recommendation correctly recognized that most of the Subpoena's requests have no bearing on "an ostensible investigation into misbranded labeling," Rec. at 6—a conclusion the government does not (and cannot) meaningfully dispute. *See supra.* The Recommendation also correctly recognized that "[t]he FDCA[] does not prohibit doctors from prescribing drugs for off-label uses," *id.* at 7, and thus, the

3

4086761

off-label prescription of drugs—including puberty blockers and hormones for gender-related care—has "little to do with investigating violations of the FDCA," *id.* at 8.  The Recommendation then gave an example of the Subpoena's defects—and the government's failure to carry its burden—by highlighting how the Subpoena's requests for "personal health data," including "children's identities, social security numbers, and addresses," "shed[] no light on whether the Hospital introduced a misbranded or unapproved drug into interstate commerce under the [FDCA] and Section 331." *Id.* at 8, 9; *see also id.* at 13–14.  And the Recommendation also found that "[n]one of the government's accommodations [to the Subpoena's scope even] corresponded with the FDCA offenses that its investigation supposedly targeted." *Id.* at 13.  The Recommendation's conclusion is amply supported by the record and consistent with every other court to have analyzed the issue.[1]  It should be affirmed.

Stepping back, although the government doesn't come out and say it, it is important to recognize that its scope and relevance arguments in the objections appear to be premised on yet another new—and novel—justification for the investigation.  Recall that when the Subpoena was first served, the DOJ confirmed it had no particularized suspicion of wrongdoing and said it was investigating

---

[1] *See, e.g., In re Subpoena Duces Tecum No. 25-1431-016 ("Seattle Children's"),* 2025 WL 3562151, at *12 (W.D. Wash. Sept. 3, 2025); *In re Admin. Subpoena No. 25-1431-019 ("Boston Children's"),* 800 F. Supp. 3d 229, 238-39 (D. Mass. 2025); *QueerDoc, PLLC v. U.S. DOJ,* 2025 WL 3013568, at *6 (W.D. Wash. Oct. 27, 2025); *Children's Hosp. of Phil.,* 2025 WL 3252648, at *13 (E.D. Pa. Nov. 21, 2025); *In re 2025 UPMC Subpoena ("Univ. of Pittsburgh"),* 2025 WL 3724705, at *1-2 (W.D. Pa. Dec. 24, 2025); *In re 2025 Subpoena to Children's National Hospital* (*"Children's National"*), 2026 WL 160792, at *8 (D. Md. Jan. 21, 2026).

4

Children's Hospital because it provided gender-affirming care to minors.  Dkt. 1-3 at ¶¶ 4–7; Rec. at 14.  At the time, the government wasn't even aware that Children's Hospital had a gender clinic (the "TRUE Center").  *See* Dkt. 1-5.

Later, in response to the motion to quash, the government submitted a threadbare declaration indicating it was investigating "whether off-label promotion and/or unlawful dispensing of puberty blockers and cross-sex hormones for use by minors violated federal law." Dkt. 10-1 ¶ 6.  It didn't limit its investigation to the FDCA (nor did it in meet-and-confer conversations), even though litigation later revealed its delegated authority allows it only to investigate a violation of Section 301 of the FDCA.  *Children's Hosp. of Phil.,* No. 2:25-mc-39, Dkt. 42-1 at 2-3 (E.D. Pa. Nov. 19, 2025).  Later, after it received adverse decisions in Seattle and Boston, the government tried to submit a supplemental declaration in the Boston litigation that, for the first time, attempted to articulate a theory of liability under the FDCA, arguing that the mere "prescribing [of a drug] for unapproved uses can itself involve FDCA violations." *Boston Children's*, No. 1:25-mc-91324-MJJ, Dkt. 37 ¶ 12 (D. Mass. Oct. 7, 2025).  Three days later—and four weeks after briefing closed on the instant motion—the government tried to file a nearly-identical supplemental declaration in this litigation by attaching it to an (unfounded) motion for leave to file a surreply.  Dkt. 18 (mot.); Dkt. 20 (opp).  The Court denied the government leave to file both documents, Dkt. 32, **and the government didn't object to that ruling**, rendering the decision final.  *See* Rec. at 22 n.1; Fed. R. Civ. P. 72(a) ("A

5

4086761

party may not assign as error a defect in the order not timely objected to."); *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1059 (10th Cir. 1996) ("[W]e, like numerous other circuits, have adopted 'a firm waiver rule'").

Yet now, in its objections, the government again seeks a "do-over" by asking the Court to consider the untimely supplemental declaration it tried to submit long after briefing closed, Obj. at 7, and by pressing arguments based on the investigative theory contained therein; namely, that when puberty blockers or cross-sex hormones are prescribed by a doctor to treat gender dysphoria (an off-label use), the drugs "are [] potentially misbranded and/or unapproved new drugs" under the FDCA. *See* Obj. at 2 n.1, 5; Dkt. 36-1 (supplemental Hsiao declaration). The government should not be allowed yet another bite at the apple, particularly given its failure to object to the denial of the surreply. Nor has it met its burden to obtain one under the Civil Practice Standards. *See* Civ. Prac. Std. 72.3(b) (objector must identify and justify new arguments/exhibits).

But in any event, even if the Court were to consider this new investigative theory, it wouldn't change the analysis. As both the States' Amicus Brief and the Recommendation (which surmised the state of play) make clear, the government's theory is based on an unprecedented and legally unsupported view of the scope of the FDCA and cannot lawfully ground an FDCA investigation. *See* Dkt. 34 at 11–21 (explaining that off-label use of approved drugs does not violate the FDCA); Rec. at 22 ("a purpose of investigating the legal activity of gender-affirming care—let alone

6

ending it—cannot ground a legitimate investigation"); *see also QueerDoc, PLLC v. United States Dept. of Justice,* No. 25-7384, Dkt. 34 at 42–52 (9th Cir. Jan. 16, 2026) (same); *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 240 (3d Cir. 2012) ("Because the FDCA does not regulate the practice of medicine, physicians may lawfully prescribe drugs for off-label uses."). Indeed, in its own recent filings, the government itself has agreed. Br. for the U.S. as Intervenor and Amicus, *Penelow v. Janssen Prods., L.P.*, No. 25-1818, ECF 56 at 8 (3d Cir. Aug. 27, 2025) ("[o]nce a drug is approved for one use at one dosage, doctors are free to prescribe it for unapproved uses or at other dosages.").

If anything, the fact that the DOJ "has shifted its explanations for the investigation … as [courts] across the Nation have identified problems with the Department's numerous subpoenas" only reinforces the Recommendation's conclusion that the government has not met its burden to justify the Subpoena and its proffered post-hoc rationalization is pretextual. *Children's Hospital of Phil.*, 2025 WL 3252648, at *15. The government's objection should be overruled.

**Response to Objection 2:** The government's second objection claims the Recommendation should have modified the Subpoena rather than quashing it. Obj. at 5–6. But the government cites no authority requiring courts to do so. *See id.* Nor did the government propose any modifications. And narrowing was unnecessary in any event because the Recommendation correctly concluded the Subpoena was issued for an improper purpose. *See* Dkt. 35 at 9–22.

**Response to Objection 3:** The government's third objection claims that it didn't know it needed to justify its investigation in the first instance, and that when Children's Hospital cited the *Boston Children's* order suggesting it needed to do so, it moved to file an untimely surreply with a do-over declaration but its request was denied. This objection is meritless. It has been black-letter law since *United States v. Powell*, 379 U.S. 48 (1964), that the government bears an initial burden to justify an administrative subpoena; Children's Hospital's opening brief cited both *Powell* and *Wilson* (an in-circuit case), alerting the government of its need to do so, Dkt. 1 at 9–10; and the government, in fact, cited those same authorities in its opposition, *see* Dkt. 10 at 2, 3, 5. The government is not entitled to a do-over now simply because it submitted a patently deficient declaration. Moreover, the Recommendation correctly applied *Powell*, *Wilson*, and *United States v. Morton Salt Co.*, 338 U.S. 632 (1950), and reached the right conclusion—one that is consistent with every other court to consider the same question. *See* Dkt. 35 at 4.

**Response to Objection 4:** The government's fourth objection faults the Recommendation for "not identify[ing]" Children's Hospital's burden to show an abuse of process and critiques the Recommendation for crediting Children's Hospital's evidence of an improper purpose. Obj. at 7–8.

But the Recommendation *did* identify Children's Hospital's burden. *See* Rec. at 3–4, 9–10, 16–18 (applying *Powell*, *Wilson*, *Morton Salt*, and *United States v. Whispering Oaks*, 673 F.3d 813 (8th Cir. 2012), amongst others). And, the

8

Recommendation carefully and methodically explained how the evidence in the record demonstrated that the Subpoena was issued for an improper purpose, *i.e.*, to "pressur[e] pediatric hospitals into ending gender-affirming care." Rec. at 15, 9–22. That improper purpose was evident from, among other things, the government's overt statements, *id.* at 10–13, 15; the complete absence of predication for the investigation, *id.* at 14; the untethered and facially overbroad scope of the Subpoena, *id.* at 13; the evolving justifications for the investigation, *id.* at 14–15, Dkt. 20; and the government's failure to "grapple with the import of [Children's Hospital's] evidence, *id.* at 16. The record firmly supports the Recommendation's finding. Every other court agrees. Dkt. 35 at 4; *supra* n.1.

**Response to Objection 5:** The government's fifth objection claims it can issue a subpoena for an improper purpose so long as it *also* has a "legitimate" purpose, and it *might* have had an additional, legitimate purpose here. Obj. at 8–9 (citing *Lynn v. Biderman*, 536 F.2d 820 (9th Cir. 1976)). But here, unlike in *Biderman*, there is no evidence in the record to support finding any "legitimate" purpose. *See supra* Rsp. to Objs. 1, 4. And in any event, the government is wrong on the law. *See, e.g.*, *McLane Co. v. EEOC*, 581 U.S. 72, 77 (2017) (courts should quash where "the subpoena [] has been issued for an illegitimate purpose," even if government makes prima facie showing its "charge is proper"); *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 317 n.19 (1978) (the "dispositive question" is whether the government is "pursuing the authorized purposes in good faith").

9

**Response to Objection 6:** The government's sixth objection faults the Recommendation for considering in its improper purpose analysis public statements made by Executive Branch officials. Obj. at 9–10 (citing *Trump v. Hawaii*, 585 U.S. 667, 702 (2018)). But the government's reliance on *Trump v. Hawaii* is misplaced. As the Recommendation held, the relevant "documents are not campaign statements 'made before the President took the oath of office' used to color a 'facially neutral' proclamation," Rec. at 16; they "comprise 'the Administration's explicit agenda'" and were the basis for issuing the Subpoena, *id.*; *id.* at 10–13; Dkt. 1-3 ¶ 7; and they "evince[] pretext" because they demonstrate "a self-proclaimed practice at odds with an investigation's purported purpose," *id.* (citing *United States v. Gertner*, 65 F.3d 963, 969–70 (1st Cir. 1995)). The Recommendation's analysis was sound.

**Response to Objection 7:** The government's final objection faults the Recommendation for concluding the Subpoena is not lawfully authorized. But the Recommendation's analysis was spot-on. *See* Rec. at 9–22. As it correctly noted, HIPAA subpoenas are creatures of statute and can be used only to investigate a "federal healthcare offense"—here, a potential violation of section 301 of the FDCA. *Id.* at 5. A subpoena issued for a purpose *other* than that which Congress has authorized is improper. *Id.* at 9–10. Upon careful review of an ample record, the Court found the Subpoena was issued to "pressur[e] pediatric hospitals into ending gender-affirming care." *Id.* at 15. It therefore was not lawfully authorized. "Every court to consider the issue agrees." *Id.* The objection is unfounded.

10

No portion of this filing was drafted using artificial intelligence.

Respectfully submitted,

Dated: February 3, 2026                    */s/ Cody Gray*

                          Elliot R. Peters
                          *epeters@keker.com*
                          Cody Gray
                          *cgray@keker.com*
                          Katherine S. Folly
                          *kfolly@keker.com*
                          Aseem Mehta
                          *amehta@keker.com*

                          KEKER, VAN NEST & PETERS LLP
                          633 Battery Street
                          San Francisco, CA 94111-1809
                          Telephone: 415-391-5400
                          Facsimile: 415-397-7188

                          *Attorneys for Children's Hospital Colorado*

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of February 2026, I filed the foregoing with the Clerk of Court using the CM/ECF system, and separately emailed the same to counsel for the United States at:

Ross Scott Goldstein
U.S. Department of Justice
450 Fifth Street NW
Liberty Square Building
Suite 6400
Washington, DC 20001
202-353-4218
Fax: 202-514-8742
Email: ross.goldstein@usdoj.gov

Scott B. Dahlquist
U.S. Department of Justice
PO Box 386
Washington, DC 20044
202-532-4602
Email: scott.b.dahlquist@usdoj.gov

Respectfully submitted,

**Date**: February 3, 2026                                             */s/ Aseem Mehta*
                                                                        Aseem Mehta